GREGOR RABINOVITCH, Plaintiff, *v.* JOSEF AUERBACH, Defendant.

Supreme Court, Special Term, New York County, November 21, 1950.

*Gustave I. Jahr* for defendant.

*Gerald Meyer* for plaintiff.

HOFSTADTER, J. The plaintiff and the defendant are now both residents of California and according to the affidavits on the present motion have been such residents for many years. The action is brought upon a contract alleged in the complaint to have been made in Paris in 1937, between the plaintiff and one Pressburger, on the one hand, and with the defendant acting on his own behalf and on behalf of Elekta-Film, A. G., a corporation of Czechoslovakia, controlled by the defendant (referred to herein as Elekta) on the other. The plaintiff and Pressburger were at the time the sole shareholders of a German company with limited liability (referred to herein as Cine-Allianz) which owned a German language motion picture. At the time Cine-Allianz was in the hands of liquidators apparently installed by the German Nazi Government in pursuit of its notorious racial and religious persecution policy. The defendant was then a resident of Czechoslovakia. By the contract sued on the plaintiff and Pressburger agreed to give their consent to the granting to the defendant or Elekta of an exclusive license to distribute the motion picture referred to in Czechoslovakia on terms providing for certain payments to Cine-Allianz and for the making of additional payments to the plaintiff and Pressburger, including the payment to them of so much of Cine-Allianz's share of the proceeds of distribution of the motion pic-

ture as should not actually be paid to Cine-Allianz by the defendant or Elekta. It was agreed further that no payments to Cine-Allianz of its share of the proceeds of distribution were to be made by the defendant or Elekta, without the consent of the plaintiff and Pressburger. It is alleged that pursuant to the agreement so made Cine-Allianz granted to Elekta an exclusive license to distribute the motion picture in Czechoslovakia for five years in return for the payment of 50% of the proceeds of distribution after the deduction of specified costs. The German liquidators waived the right to receive this share of the proceeds and consented to the payment of the same to the plaintiff and Pressburger, who at no time consented to the payment of any proceeds of distribution by either the defendant or Elekta to Cine-Allianz. The complaint appropriately alleges the distribution of the motion picture by Elekta and the nonpayment by Elekta to Cine-Allianz of the proceeds of distribution. The first cause of action demands a money judgment, the second an accounting in equity.

The defendant now moves (1) upon the complaint under subdivision 5 of rule 106 of the Rules of Civil Practice to dismiss, on the ground that neither cause of action pleaded is sufficient; (2) upon affidavits under subdivision 6 of rule 107 to dismiss on the ground that the action is not brought within the time limited therefor; and finally (3) upon affidavits under subdivision 2 of rule 102 to direct the plaintiff to join Pressburger as an additional party plaintiff.

While the agreement set out in the complaint may at first blush perhaps appear somewhat hybrid in character, because the individuals, contracting as such, were also acting for their respective corporations, nevertheless the complaint does explicitly allege an express undertaking by the defendant personally to pay the plaintiff, as distinguished from Cine-Allianz, a flat sum of money and in addition any part of Cine-Allianz's share of the proceeds of the distribution of the motion picture not paid over to Cine-Allianz. That is what the complaint states unequivocally the defendant agreed to do, and, if he did, he clearly bound himself to the plaintiff to make the stipulated payments.

The defendant urges that since Cine-Allianz, not the plaintiff and Pressburger, owned the motion picture, their consent to the granting of the license was not consideration for the defendant's undertaking. In my opinion this contention must be rejected. True, the complaint states that Cine-Allianz was in the hands

of Nazi liquidators. But it does not say that the plaintiff and Pressburger, its only shareholders, were excluded from all beneficial interest or from participation in its operations. Whatever the position of the plaintiff and Pressburger in the affairs or management of Cine-Allianz at the time or their potential future interest in the company's property, consideration for the contract springs from the fact that the plaintiff and Pressburger were under no compulsion to consent to the license, that the defendant wanted their consent and that they gave it in return for his undertaking. The extent to which the defendant benefited from the consent may affect its value, but not its validity as consideration. I hold the agreement to be founded on good consideration. Therefore, there is no need to comment on the plaintiff's contention that the validity of the agreement should be determined by the law of France, where it was entered into, and that under the civil law consideration is not required to support a contract.

The defendant argues that the Nazi confiscatory decrees must be given effect in our courts and that since the agreement sued on interferes with the operation of those decrees it is void as against public policy. The defendant's position seems to be that the agreement was one to divert corporate assets from their proper channels. Disposition of the present motion does not entail discussion of these broad questions, for the complaint alleges affirmatively that the Nazi liquidators themselves waived the payments to Cine-Allianz, and consented to the making of direct payments to the plaintiff and Pressburger. An agreement to attain a result acceptable to the liquidators is hardly to be regarded as one to flout the Nazi decrees. I do not suggest that an agreement between individuals circumstanced as were the parties to this action to secure to the only shareholders of the company, its real owners, even in hostility to the liquidators, the fruits of a license of the company's property, would be pronounced void by our courts (see *Bollack* v. *Societe Generale,* 263 App. Div. 601, motion for leave to appeal denied, 264 App. Div. 767). However, the complaint, as drawn, does not present that question and necessarily I do not decide it. The first cause of action is sufficient.

The second cause of action asks an accounting in equity on the facts alleged in the first cause of action. Recalling that the agreement as pleaded binds the defendant to pay the plaintiff and Pressburger the proceeds of the distribution of the motion picture not paid over to Cine-Allianz and that no such proceeds

were paid over to Cine-Allianz, the plaintiff here is substantially in the position of Cine-Allianz, seeking the proceeds of the distribution under the license. In such situation equity permits an accounting (see *Pearl* v. *Seventh Ave. Film Co.*, 262 N. Y. 605). In my opinion, it cannot be said on the complaint alone that the plaintiff is not entitled to an accounting in equity. The relation between the parties and the propriety of such an accounting should be determined only after the facts have been fully developed by trial. I hold the second cause of action sufficient. The motion to dismiss the complaint for insufficiency is accordingly denied.

The parties, as stated, are both now residents of California. The agreement sued on was entered into in France and was to be performed in Czechoslovakia. The defendant's suggestion that his California residence makes the limitations prescribed by that State applicable to this action is without merit (Civ. Prac. Act, § 55). The defendant argues, and adduces expert opinion in support of his position, that the action was initially barred by a limitation of three years under the laws of Czechoslovakia and that this period was extended by a special statute enacted November 21, 1946, and promulgated on December 19, 1946, until December 19, 1947, on which date the cause of action was completely barred. The plaintiff, however, submits a reasoned opinion of an expert on the law of Czechoslovakia that the applicable limitation is thirty years and that neither of the plaintiff's causes of action is barred by the laws of that country. It is obvious that this important issue cannot be resolved on the conflicting opinions expressed in the affidavits of the experts, but must await trial (*Werfel* v. *Zivnostenska Banka,* 287 N. Y. 91).

If, as further urged by the defendant, the case is governed by the six years' limitation of New York (Civ. Prac. Act, § 48), the period of the defendant's absence from the State is not a part of the time limited for commencing this action (Civ. Prac. Act, § 19). It is undisputed that the defendant was first a resident of Czechoslovakia, then of Brazil, and finally of California, his present residence. If the New York limitation applies to this action, the tolling provision of section 19 is an integral part of that limitation and the plaintiff enjoys its protection, notwithstanding his own nonresidence (*Meyers* v. *Credit-Lyonnais,* 259 N. Y. 399; *Perkins* v. *DeWitt,* 197 Misc. 369 [Botein, J.]).

The defendant's moving affidavit states that he has continuously resided in California since 1941 and during this entire period has not remained continuously absent from that State for more than three months at a time for necessary business trips. The situation so disclosed apparently would toll the New York limitation since 1941. In a rebuttal affidavit the defendant, however, asserts that since 1943 he has maintained various business offices in this city and made frequent trips to New York and was thus available for service here. He invokes the doctrine applied in *Turner* v. *American Metal Co.* (268 App. Div. 239, 266), where the nonresident's presence and amenability to process in this State were held to prevent tolling. Whether the defendant can bring himself within the rule there declared is not to be decided on the present affidavits. The continuity of absence from this State which tolls the statute under section 19 of the Civil Practice Act is not broken by sporadic returns and, in any case, the burden is on the defendant to overcome the presumption of absence from the State which flows from his nonresidence (*Banister* v. *Solomon,* 126 F. 2d 740). The presumption is made the more pertinent here by the defendant's own emphasis on California as the State of his physical presence as well as of his residence. Certainly the defendant does not make out a clear enough case of his presence here to justify a finding on affidavits. The issue must be tried (*Isenstein* v. *Malcomson,* 227 App. Div. 66).

Moreover, even if the defendant was within the State since 1943, the plaintiff may still exclude from the period of limitation the time during which Czechoslovakia, where the cause of action arose, was under German occupation (Civ. Prac. Act, § 13). That occupation lasted until May, 1945. The tolling provisions of this section apply to nonresidents as well as residents and a plaintiff may invoke them without establishing either a legal or practical disability to sue (see 1949 Report of N. Y. Law Revision Commission; N. Y. Legis. Doc., 1949, No. 65 [L], pp. 26–30).

It follows that the motion to dismiss under subdivision 6 of rule 107 must be denied, but without prejudice to the right to plead in the answer any limitation which the defendant deems applicable.

The plaintiff consents to the joinder of Pressburger as an additional party plaintiff and the order hereon will so provide.

The defendant argues also that the court should, in the exercise of discretion, refuse jurisdiction of this action because both parties are nonresidents and because Elekta is not a party

defendant. Our courts have, however, afforded nonresidents a forum in which to litigate controversies such as the present (*Hutchinson* v. *Ward*, 192 N. Y. 375; *Wertheim* v. *Clergue*, 53 App. Div. 122). Elekta is not shown to be a joint obligor and, in any case, is beyond the court's jurisdiction. In such a situation the plaintiff may prosecute the action though Elekta is not a party (Civ. Prac. Act, §§ 193, 1197–1201; Debtor & Credit Law, § 232). Elekta is neither an indispensable nor a conditionally necessary party (*Greenleaf* v. *Safeway Trails*, 140 F. 2d 889). This disposition is, however, without prejudice to any action the defendant may be advised to take to bring Elekta into the action.

The defendant's contention that the action should be dismissed for laches obviously cannot be determined on affidavits.

The defendant may answer within ten days after service of the order to be entered hereon, with notice of entry. Settle order.