**NORTHERN SUPPLY, INC., Appellant,**

v.

**CURTISS–WRIGHT CORPORATION,**
Appellee.

No. 480.

Supreme Court of Alaska.

Jan. 11, 1965.

Murphy L. Clark, Hughes, Thorsness & Lowe, Anchorage, for appellant.

Eben H. Lewis, Robison, McCaskey & Lewis, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

Appellee, a Delaware corporation with a place of business in Indiana, was the manufacturer of a road scraper sold in Alaska by appellant to Wright Truck & Tractor Service, Inc. In litigation between Wright and appellant the former claimed that the scraper was defective and that appellant had breached its warranty as to the condition of the scraper. Appellant filed a third party complaint against appellee contending that if there had been a breach of warranty, appellee and not appellant was responsible. Since there was no officer or agent of appellee in Alaska upon whom process could be served, service of the third party complaint and summons was made by delivering copies to the State Commissioner of Commerce in accordance with rule and statute.[1]

The issue here is whether such service was effective to give the superior court jurisdiction over appellee. Two questions must be answered to resolve this issue: (1) does state law provide for the assertion of jurisdiction in the facts of this case; and (2) will the assertion of jurisdiction be consistent with constitutional requirements of due process.[2]

*State Law*

The state law pertinent to the problem here is AS 10.05.642 which provides:

"When a foreign corporation authorized to transact business in the state, or not authorized to transact business in the state but doing so, fails to appoint or maintain a registered agent in the state, or when a registered agent cannot with reasonable diligence be found at the registered office, or when the certificate of authority of a foreign corporation is suspended or revoked, the commissioner is an agent upon whom process, notice, or demand may be served. Service on the commissioner shall be made by delivering to and leaving with him, or with a person designated by him in the corporation department of his office, duplicate copies of the process, notice, or demand. The commissioner shall immediately have one copy forwarded by registered or certified mail, addressed to the corporation at its principal office in the state or country under whose laws it is incorporated. Service on the commissioner is returnable in not less than 30 days."

The question is whether the alleged breach of warranty as to the condition of the road scraper, sold by appellant to Wright, was

1. Civ.R. 4(d) (4). AS 10.05.642.

2. Waltham Precision Instrument Co. v. McDonnell Aircraft Corp., 310 F.2d 20, 22 (1st Cir. 1962); Ark-La Feed & Fertilizer Co. v. Marco Chemical Co., 292 F.2d 197, 201 (8th Cir. 1961); Bomze v. Nardis Sportswear, 165 F.2d 33, 35 (2d Cir. 1948); Ford Motor Co. v. Arguello, 382 P.2d 886, 893 (Wyo.1963).

connected with the transaction of business in the state by appellee, so as to bring the above quoted statute into operation.

The undisputed facts show that between April 1960 and September 1962 there was in effect a distribution sales and service agreement between appellant and appellee. Under the terms of this agreement appellant was given the exclusive right to sell appellee's earthmoving equipment and parts and accessories in Alaska. The purpose of the agreement, so far as appellee was concerned, was to expand its equipment sales in the construction industry in Alaska with the hope of making a substantial profit.

In November 1960, while the distribution agreement was in effect, appellant ordered three road scrapers from appellee. One scraper was eventually delivered and was sold by appellant to Wright. Representatives of appellee came to Alaska to aid and assist appellant in culminating the sale. In addition to the scraper, numerous parts and other supplies were ordered from appellee by appellant.

Appellee was engaged in the commercial enterprise of manufacturing and selling earthmoving equipment. That was its business. It carried on or transacted that business in Alaska when it entered into the distribution agreement with appellant for the purpose of expandng its equipment sales in the construction industry in Alaska, and when pursuant to that agreement one of appellee's scrapers was sold in Alaska with the aid of appellee's representatives and when parts and other supplies were furnished to appellant. This was business transacted in the state within the meaning of AS 10.05.642. We construe that statute as having for its purpose the providing of a local forum for residents of the state who have a grievance against a foreign corporation growing out of its business activities within the state.[3] The claim for breach of warranty regarding the scraper sold to Wright was directly connected with the

business that appellee transacted in the state; therefore AS 10.05.642 provides for the assertion of jurisdiction over appellee.

Appellee contends that its activities in this case did not amount to the transaction of business in the state because of a provision of the state corporation law which limits the scope of the words "transact business" as used in AS 10.05.642. Appellee relies upon AS 10.05.600 which in relevant part provides:

> "Without excluding other activities which may not constitute transacting business in the state, a foreign corporation does not transact business in the state by carrying on any of the following activities: * * *
>
> "(5) effecting sales through independent contractors; * * *
>
> "(9) transacting business in interstate commerce;
>
> "(10) conducting an isolated transaction completed within a period of 30 days not in the course of a number of repeated transactions of like nature."

Appellee argues that the transaction involving the distribution agreement and the sale of the scraper falls within one or more of the foregoing categories of activities which do not constitute the transaction of business in the state, and that appellee, therefore, had transacted no business such as to justify service of process upon appellee under the provisions of AS 10.05.642.

We disagree with appellee. The activities mentioned in AS 10.05.600 pertain only to the transaction of business as it relates to the power of the state to require the foreign corporation to obtain a certificate of authority to transact business in the state. AS 10.05.600 does not pertain to those activities which may subject a foreign corporation to the jurisdiction of our courts under AS 10.05.642. This is the interpretation given the Model Business Corporation Act from which Alaska's corporation law was taken. The commentary to Section 99

3. Ford Motor Co. v. Arguello, 382 P.2d 886, 896 (Wyo.1963).

of the Model Act, which is substantially the same as AS 10.05.600, states:

"The second paragraph of Section 99 of the Model Act specifies that certain actions which have been held to constitute doing business by some courts, shall not be deemed to be doing business so as to give rise to the penalties prescribed in Section 117. Section 99 does not deal with the determination of what activities may subject a foreign corporation to service of process or local taxation." [4]

That this is the correct interpretation of our statute seems apparent from a consideration of the legislative history of AS 10.-05.642. That section, when first enacted in 1957, provided:

"Whenever a foreign corporation authorized to transact business in Alaska shall fail to appoint or maintain a registered agent in Alaska, or whenever any such registered agent cannot with reasonable diligence be found at the registered office, or whenever the certificate of authority of a foreign corporation shall be suspended or revoked, then the Director of Finance shall be an agent of such corporation upon whom any such process, notice, or demand may be served. * * *" [5]

It is clear that as the law read in 1957, the legislature intended that jurisdiction over a foreign corporation was to exist only in a case where the corporation was authorized to transact business in the state. No provision was made for the exercise of jurisdiction in cases where a foreign corporation actually transacted business in Alaska but was not authorized to do so under the statutory provisions for obtaining such authorization.

■■ In 1960 the law was changed by adding the following underscored words:

"Whenever a foreign corporation authorized to transact business in Alaska, *or not authorized to transact business in Alaska but doing so*, shall fail to appoint or maintain a registered agent in Alaska * * *." [6]

Under this language the scope of jurisdiction over a foreign corporation was broadened. Jurisdiction no longer was to be limited only to cases where a foreign corporation was authorized to transact business in the state. We construe the broad language "or not authorized to transact business but doing so" as showing the legislature's intent to expand the scope of jurisdiction to cover situations where a foreign corporation was in fact transacting business in the state, whether or not the business was of such a nature as to require the corporation to obtain a certificate of authority under state law. We believe it was not the intent of the legislature that a foreign corporation should be allowed to escape service of process and that our residents should be compelled to go into foreign jurisdictions to vindicate rights arising out of business transacted by a foreign corporation in the state, simply because such corporation was not doing sufficient business to require it to obtain a certificate of authority. Our view of the statute recognizes a distinction between activities of a foreign corporation which will bring the corporation within the jurisdiction of our courts, and activities necessary to subject the foreign corporation to domestication—a distinction that has received recognition elsewhere.[7] We construe the words "transact business" as used in AS 10.05.642, the service of process statute, as encompassing all those activities which would subject a foreign corporation

4. 2 Model Business Corp. Act Annot. § 99, at 566 (1960).

5. SLA 1957, ch. 126, § 108.

6. SLA 1960, ch. 25, § 3.

7. Perkins v. Benguet Consol. Min. Co., 342 U.S. 437, 445–446, 72 S.Ct. 413, 96 L.Ed. 485, 492 (1952); Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915, 917 (1917); State v. Ford Motor Co., 208 S.C. 379, 38 S.E.2d 242, 247 (1946); 20 C.J.S. Corporations § 1828 (1940); Isaacs, An Analysis of Doing Business, 25 Colum.L.Rev. 1018, 1024 (1925); Note, 45 Mich.L.Rev. 218 (1946–1947).

to the jurisdiction of our courts when measured by the outer limits of the due process clause of the federal constitution.

*Due Process*

■■ It is not enough that the legislature has asserted jurisdiction over appellee in the circumstances of this case. The constitutional requirements of due process of law must also be satisfied before jurisdiction will exist. Before a binding judgment in personam could be made against appellee, the due process clause of the federal constitution requires that appellee have sufficient contact with Alaska so as to make it reasonable and just, according to our traditional conception of fair play and substantial justice, to permit the state to enforce the obligations which appellee has allegedly incurred.[8]

■ Appellee purposefully availed itself of the privilege of conducting activities within the state, thus invoking the benefits and protection of its laws, when it entered into the distribution agreement with appellant with the objective of making a substantial profit from the sale of appellee's equipment in the construction industry in the state.[9] As a result of such activities, a road scraper manufactured by appellee was sold to a citizen of the state for use in the state. Appellant's claim against appellee has to do with the condition of that scraper, evidence of which was primarily available in the state because the scraper was there as were those who used it and could testify as to its operation and condition. The transaction out of which the claim for breach of warranty arose had such a substantial connection with the state that it would not be unfair and in violation of due process to require appellee to defend the claim brought against it in the Alaska court.[10]

We conclude that service of process on appellee made in accordance with AS 10.-05.642 was valid. The judgment of the superior court quashing service of summons on appellee is reversed.

8. International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L. Ed. 95, 104 (1945).

9. See Hanson v. Denckla, 357 U.S. 235, 253–254, 78 S.Ct. 1228, 2 L.Ed.2d 1283, 1298 (1958).

10. McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed. 2d 223, 226 (1957).